# STATE OF CONNECTICUT *v.* FERMIN ADORNO, JR.
## (AC 15747)

Landau, Schaller and Spear, Js.

Argued December 2, 1996—officially released May 13, 1997

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, were *John T. Redway*, state's attorney, *Timothy Liston*, senior assistant state's attorney, and *Zachary Osborne*, law student intern, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of one count of burglary in the first degree in violation of General Statues § 53a-101 (a) (1), and one count of felony murder in violation of General Statutes § 53a-54c. On appeal, the defendant claims that the trial court improperly (1) admitted his statement to the police, (2) admitted evidence of uncharged misconduct, and (3) applied the felony murder statute. He also claims, for the first time on appeal, that there was insufficient evidence for a jury to conclude that an entry had occurred or that he had the intent to commit the predicate crimes of assault and threatening and that the trial court improperly charged the jury on the elements of burglary. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 13, 1992, at approximately 3 a.m., the defendant and several others drove to the apartment of Delmar Johnson, kicked in his door and fired shots into his apartment, killing him. On August 21, 1992, the police arrested the defendant and took him into police custody. While in custody, the defendant gave an oral

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

statement indicating that on August 13, 1992, he had gone to Portland with a group of five men in two cars, had kicked in Johnson's door and had started shooting.

## I

The defendant first claims that the trial court improperly failed to suppress an inculpatory oral statement made by him to the police. He asserts that there was neither a valid waiver of his *Miranda* rights nor a showing that the statement was given voluntarily. We disagree.

The defendant first claims that there was not a valid waiver of his *Miranda* rights. "To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case. . . . Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Stanley*, 223 Conn. 674, 686, 613 A.2d 788 (1992).

After a careful review of the record, we conclude that the state has met its burden of proof. The defendant was read his *Miranda* rights, read those rights himself, initialed each of them, told the detective that he understood those rights, signed the waiver form, had no difficulty reading or writing, and was not under the influence of alcohol or drugs. Moreover, the record indicates that the defendant was aware of his *Miranda* rights due to prior arrests and convictions. We conclude, therefore, that there was substantial evidence from which the trial

court could have found that the defendant was capable of and did in fact voluntarily, knowingly and intelligently waive his *Miranda* rights. See id.

We next address whether the statement was voluntary. "[T]he use of an involuntary confession in a criminal trial is a violation of due process. . . . The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence. . . . [Our Supreme Court has] stated that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined. . . . The ultimate test remains . . . [i]s the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. . . . The determination, by the trial court, whether a confession is voluntary must be grounded upon a consideration of the circumstances surrounding it. . . .

"This determination of voluntariness and admissibility, in the first instance, is a question of fact for the trial court to resolve in the exercise of a legal discretion in accordance with constitutional standards of due process. . . . This, of course, includes decisions on questions of credibility presented to the trial court. . . . Though the question is ultimately factual, our usual deference to fact-finding by the trial court is qualified on the question of voluntariness by the necessity for an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence. . . .

"[I]n *State* v. *Gonzalez*, 206 Conn. 213, 221–22, 537 A.2d 460 (1988), [our Supreme Court] noted, quoting

from *State* v. *Perry*, 195 Conn. 505, 516, 488 A.2d 1256 (1985), that: The [traditional] test of voluntariness is whether an examination of all the circumstances shows that the conduct of police was such as to overbear the defendant's will to resist and bring about a confession, not freely self-determined. . . . The ultimate question of whether a defendant's will has been overborne, thus resulting in an involuntary statement in a particular case, involves, as noted, an assessment of the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. . . . Some of those also taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep. . . .'' (Citations omitted; internal quotation marks omitted.) *State* v. *Madera*, 210 Conn. 22, 39–41, 554 A.2d 263 (1989).

After a review of details of the interrogation and the relative competence of the accused, we can find no evidence of improper police influence or persuasion, or any evidence that the statement was given involuntarily. We conclude, therefore, that the trial court properly refused to suppress the defendant's confession.

## II

The defendant next claims that the trial court improperly admitted evidence of prior misconduct. We disagree.

" 'As a general rule, evidence of a *defendant's* prior crimes or misconduct is not admissible. *State* v. *Crumpton*, 202 Conn. 224, 228, 520 A.2d 226 (1987); *State* v. *Geyer*, 194 Conn. 1, 5, 480 A.2d 489 (1984). We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove

intent, identity, malice, motive, a system of criminal activity or the elements of a crime. *State* v. *Mooney*, 218 Conn. 85, 126, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Brown*, 199 Conn. 47, 56, 505 A.2d 1225 (1986); *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982).' " (Emphasis added.) *State* v. *Harris*, 43 Conn. App. 830, 835–36, 687 A.2d 544 (1996). "The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency." *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982). "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987).

At trial, the state offered the testimony of Wilson Ortiz, an acquaintance of the defendant. The defendant objected claiming that Ortiz' testimony was irrelevant and more prejudicial than probative. Specifically, he asserted that the testimony constituted evidence of the defendant's prior misconduct. The trial court overruled the defendant's objection and admitted the evidence as relevant to show "that there was an ongoing battle from which the jury can infer and make logical and reasonable inferences as to the motive, as to the intent [and] as to any other matters." Ortiz then testified that he had been assaulted on three separate occasions, that he told the defendant and other members of the defendant's gang about these assaults two weeks before the shooting and that the defendant had been present while a car belonging to another acquaintance had been damaged while in the vicinity of the victim's apartment.

We conclude that Ortiz' testimony did not constitute evidence of the defendant's prior misconduct because it did not show any bad act or criminal conduct on the

part of the defendant. See *State* v. *Brown*, 41 Conn. App. 317, 324, 675 A.2d 1369, cert. granted on other grounds, 238 Conn. 901, 677 A.2d 1376 (1996). Moreover, in so far as Ortiz' testimony associated the defendant with the gang, such association with a gang, by itself, does not demonstrate any bad act or criminal conduct on part of the defendant and, even if we were to characterize it as prior misconduct, it would be properly admissible to establish the defendant's motive or intent. See *State* v. *Taylor*, 239 Conn. 481, 502, 687 A.2d 489 (1996). Accordingly, we conclude that the trial court did not abuse its discretion in admitting Ortiz' testimony.

### III

The defendant next claims that the trial court improperly applied the felony murder statute to a homicide occurring during the course of a burglary where the underlying crimes alleged in proof of the burglary were assault and threatening.[2] He claims that the felony murder statute does not contemplate any variation of homicide or assault as the predicate offense for felony murder. We disagree.

General Statutes § 53a-54c provides in relevant part that "[a] person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit . . . burglary . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ." "To convict an accused as a principal in the crime of felony murder the state must prove beyond a reasonable doubt that he was a participant in the underlying felony and that he, or another participant in the felony, caused the death of the victim in the

---

[2] General Statues § 53a-101 (a) provides in pertinent part: "A person is guilty of burglary in the first degree when enters or remains unlawfully in a building with intent to commit a crime therein . . . . "

course of and in furtherance of the felony." *State* v. *MacFarlane*, 188 Con. 542, 550, 450 A.2d 374 (1982). "[Section] 53a-54c contains no mens rea requirement beyond that of an intention to commit the underlying felony upon which the felony murder charge is predicated." *State* v. *Valeriano*, 191 Conn. 659, 662, 468 A.2d 936, (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984); see *State* v. *Young*, 191 Conn. 636, 469 A.2d 1189 (1983). Here, the defendant was a participant in the burglary, he knowingly entered Johnson's premises unlawfully with the intent, at the very least, to threaten, or to place Johnson in fear of imminent serious physical injury, and he caused Johnson's death in the course of and in furtherance of the burglary. The trial court, therefore, properly applied the felony murder statute in this case.

## IV

The defendant next claims that there was insufficient evidence to support his burglary conviction. He argues that the evidence was insufficient for the jury to find that an entry occurred or that he intended to commit the predicate crimes of assault and threatening. We disagree.

The defendant did not preserve this claim at trial. He seeks review under *State* v. *Evans*, 165 Conn. 61, 69–70, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Our Supreme Court has stated that sufficiency of the evidence claims "necessarily meet the four prongs of *Golding*." *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993); see also *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995). Therefore, we will review this claim.

" 'We employ a two part test in reviewing claims relating to the sufficiency of the evidence. . . . We first construe the evidence presented at trial in a light most favorable to sustaining the verdict. . . . We then deter-

mine whether, from the evidence and all the reasonable inferences which it yields, [the jury] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . .' The probative force of the evidence is not diminished if it consists in whole or in part of circumstantial evidence rather than direct evidence. . . . It is not one of fact, but the cumulative impact of a multitude of facts that establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted.) *State* v. *Coleman*, 35 Conn. App. 279, 293–94, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994).

"In determining whether the defendant is guilty, it is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Furthermore, in considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citations omitted; internal quotation marks omitted.) *State* v. *Roy*, 38 Conn. App. 481, 488–89, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996).

In this case, it was reasonable for the jury to conclude that at least some part of the defendant's body, his hand or foot for example, intruded into the victim's apartment. Common sense dictates that it would be reasonable to conclude that, in using the force necessary to kick open a locked door, the momentum would carry the defendant or one of his companions into the victim's apartment. The testimony of the officers at trial

as to the condition of the door and the photographs of the door strongly support the inference that the defendant forced the door open and was carried at least minimally into the victim's apartment. From the facts established and the reasonable inferences to be drawn therefrom, it was reasonable for the jury to have found that an entry occurred. Moreover, the defendant's use of force in kicking in the door, and his use of a firearm in firing gunshots into the victim's apartment provided the jury with sufficient evidence for it to conclude that the defendant intended to assault and threaten the victim. "[T]he jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. *State* v. *Tatem*, 194 Conn. 594, 598, 483 A.2d 1087 (1984); *State* v. *Foord*, 142 Conn. 285, 294, 113 A.2d 591 (1955)." *State* v. *Dumalo*, 3 Conn. App. 607, 616–17, 491 A.2d 404 (1984). " 'Generally, intent can be proved only by circumstantial evidence. . . . Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide.' " (Citations omitted.) *State* v. *Grant*, 219 Conn. 596, 603, 594 A.2d 459 (1991). From the evidence presented and the reasonable inferences to be drawn therefrom, it was reasonable for the jury to have found that the defendant entered the victim's apartment and intended to commit assault and to threaten.

## V

The defendant claims finally that the trial court improperly instructed the jury on the crime of burglary. We disagree.

"The defendant raises this claim for the first time on appeal. To preserve a challenge to the jury charge, the defendant must make a written request to charge, or

take exception to the jury instructions when they are given by the trial court. . . . This court is not bound to review claims of instructional error if the party raising the claim neither submitted a written request to charge, nor excepted to the charge given by the trial court. Practice Book § 852.[3] 'The purpose of [§ 852] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials.' " *State* v. *Pearsall*, 44 Conn. App. 62, 66–67, 687 A.2d 1301 (1997).

"The defendant did not object to this instruction at trial and raises this claim for the first time on appeal. He contends that his claim meets the criteria of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), as refined by *State* v. *Golding*, [supra, 213 Conn. 233].[4] We agree with the defendant that the record is adequate for review and that his claim that the trial court failed to instruct the jury adequately on the elements of a crime is of constitutional magnitude alleging the violation of

---

[3] Practice Book § 852 provides: "An appellate court shall not be bound to consider error as to the giving of, or failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

[4] "Under *Golding* a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 631–32 n.5, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

a fundamental right. *State* v. *Golding*, supra. Therefore, we will proceed to examine his claim to determine whether the alleged violation clearly exists and clearly deprived the defendant of a fair trial." *State* v. *Owens*, 25 Conn. App. 181, 186 n.2, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 332 (1991).

"At the outset, we note that under . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, it is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering probable inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Citations omitted; internal quotation marks omitted.) *State* v. *Pearsall*, supra, 44 Conn. App. 67–68.

Our review of the trial court's instruction reveals that it provided the jury with a clear understanding of the elements of the crime of burglary and was, therefore, constitutionally adequate.[5]

---

[5] The court instructed the jury that "[o]rdinarily, a building implies a structure which may be entered and used by human beings whether or not they actually so entered and used a building for a business or for other purposes involving occupancy by people. Furthermore, as in this case, where

The judgment is affirmed.

In this opinion the other judges concurred.

a building consists of separate unions such as separate apartments, each apartment may be considered as a separate building. In other words, any one of the separate units, separately secured or occupied when intruded upon, may be considered a building plus the whole building is considered a building for purposes of any unlawful intrusion into any part of it. If you determine that the premises is a building as that term has been defined, you must then decide whether the defendant unlawfully entered such building. In other words, the state must prove beyond a reasonable doubt that the defendant entered unlawfully. A person enters unlawfully in or upon premises when the premises at the time of such entry are not open to the public and when the defendant is not otherwise licensed or privileged to do so."