STATE OF CONNECTICUT *v.* STEPHEN BELANGER
(AC 17279)

O'Connell, C. J., and Schaller and Hennessy, Js.

Argued March 30—officially released September 21, 1999

*Robert P. Hanahan,* with whom, on the brief, was *Mark Ouellette,* for the appellant (defendant).

*Eileen McCarthy Geel,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, *Timothy J. Sugrue,* executive assistant state's attorney, *Susann E. Gill,* senior assistant state's attorney, and *Michael Gailor* and *Marjorie Allen Dauster,* assistant state's attorneys, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Stephen Belanger, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the second

degree with a firearm in violation of General Statutes §§ 53a-49[1] and 53a-60a,[2] reckless endangerment in the first degree in violation of General Statutes § 53a-63,[3] carrying a pistol without a permit in violation of General Statutes § 29-35 (a),[4] having a weapon in a motor vehicle in violation of General Statutes § 29-38[5] and threatening

[1] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. . . ."

[2] General Statutes § 53a-60a provides in relevant part: "(a) A person is guilty of assault in the second degree with a firearm when he commits assault in the second degree as provided in section 53a-60, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. No person shall be found guilty of assault in the second degree and assault in the second degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information. . . ."

[3] General Statutes § 53a-63 provides in relevant part: "(a) A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person. . . ."

[4] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same . . . ."

[5] General Statutes § 29-38 provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section, means any pistol or revolver . . . ."

in violation of General Statutes § 53a-62.[6] On appeal, the defendant claims that the trial court improperly (1) instructed the jury on all five counts, and (2) instructed the jury that the reasonable doubt standard and the presumption of innocence are to protect society and the innocent rather than the guilty.[7] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of March 8, 1995, and into the morning of March 9, 1995, the defendant was a customer at a bar in Hartford. At approximately 12:40 a.m., the defendant was involved in a disturbance in the bar, which was reported to the manager, Tom Neigro, by Peter Tannenbaum, an employee. Neigro then asked the defendant to leave, and the defendant did so.

Shortly thereafter, Tannenbaum heard what sounded like two people arguing outside and proceeded to investigate. Upon arriving outside, Tannenbaum saw the defendant sitting in the driver's seat of a vehicle stopped parallel to the bar with the driver's window open. The defendant was pointing a gun out the window at Dewey Carter. When Tannenbaum came out of the bar, the defendant switched the focus of the gun from Carter to Tannenbaum. Tannenbaum responded by taking cover behind a parked car and calling to the defendant to put the gun down and leave the parking lot. The defendant fired a shot at Tannenbaum. Tannenbaum fired a warning shot into the air with his own revolver and, subsequently, fired a second shot at the defendant's vehicle. The defendant thereafter drove out of the parking lot.

---

[6] General Statutes § 53a-62 (a) provides: "A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience."

[7] In his brief, the defendant also seems to make several claims of insufficient evidence. We decline, however, to review those claims as they are

The defendant's vehicle was later stopped by state troopers. In the course of the stop, Trooper Andre Joyner searched the vehicle and found a nine millimeter semiautomatic pistol disassembled into three pieces, all in different parts of the vehicle. The magazine contained live rounds of ammunition. Joyner was unable, however, to find the pistol's spring. Officer Debra Camacho of the Hartford police department also searched the defendant's vehicle and found a black holster, three live nine millimeter rounds of ammunition and a discharged nine millimeter shell casing.

At trial, both the state and the defendant submitted proposed jury instructions to the court. After the trial court instructed the jury, both parties took exceptions. Subsequently, the trial court clarified its instructions to the jury. The following day, the jury found the defendant guilty on all counts. This appeal followed.

I

The defendant first claims that the trial court improperly instructed the jury on all five counts. We are not persuaded.

Of the instructions challenged by the defendant, his claims with respect to three counts were properly preserved in the trial court for our review, while claims with respect to two counts were not preserved.[8]

A

Preserved Claims

Our standard of review concerning preserved claims of improper jury instruction is well settled. "The charge

inadequately briefed. See *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998).

[8] A claim of inadequate jury instruction is unpreserved unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. See Practice Book § 42-16, formerly § 852.

is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 47 Conn. App. 91, 95, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998).

1

The defendant claims that with respect to the count of criminal attempt to commit assault in the second degree with a firearm, the trial court improperly failed to instruct the jury that it must find that (1) the defendant was in possession of the gun in assembled condition on March 9, 1995, and (2) the defendant pointed or fired it in the vicinity of a person. We are not persuaded.

The trial court instructed the jury as follows: "If you determine that the firearm was not operable at the time of the incident then you must find the defendant not guilty [of the charge of criminal attempt to commit assault in the second degree with a firearm]." This instruction clearly informed the jury that it must determine whether the gun was assembled and operable, or dismantled and inoperable, at the time of the incident.

Regarding whether the jury was instructed adequately concerning the presence of a victim, as required by General Statutes § 53a-60,[9] a review of the charge

---

[9] Section 53a-60a requires, inter alia, an assault in the second degree as provided in General Statutes § 53a-60, which provides in relevant part: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to *another person,* he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by

reveals that the trial court, in instructing the jury, set forth each element of § 53a-60a as well as the elements necessary under § 53a-60. Together, these instructions made it clear that the jury must find that there was a victim. Moreover, the instructions as a whole adequately apprised the jury of its duty to find all of the elements of this offense beyond a reasonable doubt in order to convict the defendant on this count. We conclude that, viewing the charge as a whole, the trial court's instruction on the count of criminal attempt to commit assault in the second degree with a firearm fairly and accurately informed the jury of the elements of this offense, thereby avoiding any injustice to the defendant.

2

The defendant next claims that the trial court improperly instructed the jury with respect to the count of carrying a pistol without a permit. Specifically, the defendant argues that the trial court improperly failed to instruct the jury that it must find that the gun had a barrel measuring less than twelve inches in length. We disagree.

The record shows that the trial court did, in fact, instruct the jury on the requisite length of the barrel and on the jury's duty to find whether the defendant's gun qualified under the statute beyond a reasonable doubt.[10] We conclude, therefore, that the trial court's

means of the discharge of a firearm; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ." (Emphasis added.) See footnote 2.

[10] Specifically, the trial court instructed: "The defendant is also charged with unlawfully carrying a pistol without a permit in violation of § 29-35 (a) of the Connecticut General Statutes. . . . For you to find the defendant guilty of this crime, *you must find that the state has proven beyond a reasonable doubt* that the defendant carried a pistol upon his person, that the defendant did so while outside his dwelling house or place of business and that the defendant did not have a valid permit to carry that pistol. . . . Of course, *you must find that what the defendant held upon his person was a pistol. A pistol is defined in the statute as a firearm having a barrel less than twelve inches in length.*" (Emphasis added.)

instruction on the count of carrying a pistol without a permit was not deficient and, further, when viewed in light of the entire charge, was a fair representation of the issues to the jury, thus avoiding any injustice to the defendant.

3

The defendant claims next, with respect to the count of having a weapon in a motor vehicle, that the trial court improperly failed to instruct the jury that to convict the defendant it must find that he had a weapon, assembled or unassembled, in his vehicle at the time of the incident. The defendant's claim lacks merit.

The trial court instructed the jury as to all of the elements of this count and as to its duty to find them all beyond a reasonable doubt before convicting the defendant. Also, viewing the trial court's charge as a whole, we note that our discussion in part I A 1 concerning the operability of the gun responds to the defendant's argument. Accordingly, we conclude that the trial court's instruction as to having a weapon in a motor vehicle fairly represented the case to the jury so as to avoid any injustice to the defendant.

B

Unpreserved Claims

"To preserve a challenge to the jury charge, the defendant must make a written request to charge, or take exception to the jury instructions when they are given by the trial court. . . . This court is not bound to review claims of instructional error if the party raising the claim neither submitted a written request to charge, nor excepted to the charge given by the trial court. Practice Book § [42-16]. The purpose of [§ 42-16] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused

by unnecessary retrials." (Internal quotation marks omitted.) *State* v. *Adorno*, 45 Conn. App. 187, 196–97, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997).

With respect to the counts of reckless endangerment and threatening, the defendant neither objected to the trial court's instructions nor submitted proposed jury instructions in a manner adequate to preserve the claims he now makes. He contends, however, that his claims meet the criteria of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), as refined by *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). .

"Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 631 n.5, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997). We conclude that the record is adequate for review and that claims of inadequate instruction on the elements of a crime are of constitutional magnitude alleging the violation of a fundamental right. See *State* v. *Owens*, 25 Conn. App. 181, 186 n.2, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991). We will proceed, therefore, to examine the defendant's claims to determine whether the alleged

violations clearly exist and clearly deprived him of a fair trial.

We note that under *Golding*, an unpreserved constitutional claim of instructional error will fail if, considering the substance of the charge rather than the form of what was said, it is not reasonably possible that the jury was misled. See *State* v. *Adorno*, supra, 45 Conn. App. 198. "In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering [possible] inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) Id.

1

The defendant's first unpreserved claim of improper jury instruction is that with respect to the count of reckless endangerment, the trial court improperly failed to instruct the jury that to convict it must find that the defendant pointed a weapon out the window of his car and discharged it in such a manner or direction as to endanger an identifiable person. We disagree.

Our review of the trial court's entire instruction reveals that it provided the jury with the elements of the crime, a clear understanding of the these elements

and ample guidance on how to determine their presence. The instructions regarding the crime of reckless endangerment were, therefore, constitutionally adequate.

## 2

The defendant's second unpreserved claim of improper jury instruction attacks the adequacy of the instruction on the count of threatening. The defendant claims that the trial court improperly failed to instruct the jury that it must find that the defendant threatened an identifiable person. We are not persuaded.

The record shows that the trial court carefully instructed the jury on each element of the crime of threatening, as well as on the three ways in which it can be committed. Furthermore, the balance of the whole charge gave the jury sufficient guidance as to its duty as the finder of fact. Accordingly, we conclude that the trial court's instructions with respect to this count were constitutionally adequate and that the alleged constitutional error did not clearly exist.

## II

The defendant claims finally that the trial court improperly instructed the jury that the reasonable doubt standard and the presumption of innocence are to protect society and the innocent rather than the guilty.[11] We do not agree.

---

[11] The trial court instructed: "It is the sworn duty of the courts and of you as jurors to safeguard the rights of persons charged with crimes by respecting the presumption of innocence which the law gives to every person charged. *But the law is made to protect society and innocent persons and not to protect guilty ones.* If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that an accused person is guilty of the crime charged, then it is the sworn duty of you, the jurors, to enforce the law and to render a verdict of guilty." (Emphasis added.)

Our Supreme Court consistently has held that jury instructions essentially the same as the ones used here do not confuse juries. See, e.g., *State* v. *Faust*, 237 Conn. 454, 477–78, 678 A.2d 910 (1996); *State* v. *Cassidy*, 236 Conn. 112, 145, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996); *State* v. *Palmer*, 196 Conn. 157, 168–69, 491 A.2d 1075 (1985). In support of his argument for a divergence from these precedents, the defendant relies on a recent decision of the United States Court of Appeals for the Second Circuit that reversed convictions due to the federal district court's use of the same instructions. See *United States* v. *Doyle*, 130 F.3d 523 (2d Cir. 1997). In the wake of *Doyle*, our Supreme Court has considered whether an instruction essentially the same as that challenged by the defendant violates a defendant's due process rights. *State* v. *Schiappa*, 248 Conn. 132, 167–68, 728 A.2d 466 (1999). "Although the court in *Schiappa* disapproved of the challenged language and, pursuant to its supervisory authority over the administration of justice, directed our trial courts to refrain from using the challenged language in future cases, the court nevertheless rejected the defendant's constitutional claim based on the particular instructions given in that case." *State* v. *Ryan*, 53 Conn. App. 606, 610, 733 A.2d 273 (1999).

In this case, judgment was rendered in 1997, prior to our Supreme Court's decision in *Schiappa*. Because the particular portion challenged by the defendant is essentially the same as that considered in *Schiappa*, our decision on this issue is controlled by *Schiappa*, and the defendant's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.